# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-1946V
### Filed: July 11, 2025

|  |  |
|---|---|
| CYNTHIA JENKINS,<br><br>　　　　　　　Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Special Master Horner |

*Phyllis Widman, Widman Law Firm, LLC, Linwood, NJ, for petitioner.*
*Mitchell Jones, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On October 18, 2024, petitioner's counsel filed the instant motion for an award of interim attorneys' fees and costs in the amount of $145,820.81. (ECF No. 102, p. 5.) For the reasons discussed below, I award petitioner interim attorneys' fees and costs in the reduced amount of $116,350.41.

## I.    Procedural History

On December 19, 2018, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, et seq. (2012),[2] alleging that she sustained tinnitus, dizziness/vertigo, headaches, diffuse thickening of the dura with enhancement and extension into the internal auditory canals, bilateral hearing loss, facial neuropathy, reactivation of the shingles virus, and/or a significant aggravation of a previous condition(s), as the result of the influenza ("flu") vaccine that she received on December

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citation to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

19, 2016. (ECF No. 1.) The case was originally assigned to a different Special Master. (ECF No. 4.) Petitioner filed medical records, an affidavit, and a statement of completion in January of 2019. (ECF Nos. 7-8; Exs. 1-9.) In August of 2019, petitioner filed additional medical records and a second statement of completion. (ECF Nos. 17-18; Exs. 10-12.) Thereafter, the case was reassigned to the undersigned. (ECF Nos. 22-23.) On November 24, 2019, respondent filed his Rule 4(c) Report, recommending against compensation. (ECF No. 26.)

Petitioner filed an expert report by neurologist Georges Ghacibeh, M.D., and supporting medical literature in April of 2020. (ECF No. 29; Exs. 12-18.) In June of 2020, respondent filed an expert report by neurologist Michael Wilson, M.D., and supporting medical literature. (ECF No. 31; Exs. A-E.) Thereafter, petitioner filed a responsive expert report by Dr. Ghacibeh in September of 2020. (ECF No. 33; Ex. 19.)

A Rule 5 conference was held on January 5, 2021, during which the undersigned noted that petitioner may benefit from providing an expert opinion from an immunologist. (ECF No. 36, p. 2.) In May of 2021, petitioner filed additional medical records as well as an amended petition, which added meningitis to the list of injuries petitioner alleges she suffered as a result of her flu vaccine. (ECF Nos. 39, 41; Exs. 20-21.) On May 27, 2021, petitioner filed an expert report by immunologist Omid Akbari, Ph.D., as well as supporting medical literature. (ECF No. 43; Exs. 22-71.) Subsequently, respondent filed a responsive report by Dr. Wilson, and petitioner filed a responsive report by Dr. Ghacibeh. (ECF Nos. 46, 51; Exs. F-I; 72-75.)

A two-day entitlement hearing was originally scheduled to commence on December 13, 2023. (ECF No. 59.) However, the hearing was rescheduled twice to accommodate respondent's expert witness, Dr. Wilson, and was ultimately rescheduled to commence on August 29, 2024. (ECF Nos. 62-62; 69, 75, 77.)

On July 11, 2024, respondent filed a status report indicating that Dr. Wilson was now unavailable for the hearing set to commence on August 29, 2024, due to a professional conflict, and requested proceeding with fact witness testimony at the scheduled hearing and otherwise continuing based on written submissions pursuant to Vaccine Rule 8(d). (ECF No. 86.) As a result, the undersigned ordered respondent to file a signed statement by Dr. Wilson explaining the nature of the conflict, noting that the hearing would not be canceled or rescheduled absent good cause. (Non-PDF Scheduling Order, filed July 12, 2024.) After reviewing the sworn statement, the undersigned concluded that Dr. Wilson did not demonstrate good cause to justify the relief sought by respondent, and that petitioner should not be prejudiced by Dr. Wilson's unavailability. (ECF No. 94.) However, the parties subsequently filed a joint status report requesting that the entitlement hearing be reduced in scope to a fact hearing. (ECF No. 95.) Petitioner requested the opportunity to file a supplemental report by Dr. Ghacibeh addressing diagnosis, with a potential responsive report by Dr. Wilson, prior to resolving the issue of entitlement via briefing pursuant to Vaccine Rule 8(d). (*Id.*) The undersigned adopted the parties' joint proposal with respect to how the case would proceed. (ECF No. 96.)

On August 7, 2024, petitioner filed a supplemental report by Dr. Ghacibeh. (ECF No. 97; Exs. 86-91.) A one-day fact hearing was held on August 29, 2024, with petitioner as the only witness. (ECF No. 113.) The undersigned permitted petitioner to have her experts, Dr. Akbari and Dr. Ghacibeh, present at the fact hearing for the benefit of observing petitioner's testimony. (*Id.* at 4.) While respondent raised an objection as his expert was not also present, the undersigned determined that allowing petitioner the opportunity to have her experts listen in on her testimony was consistent with prior scheduling orders regarding Dr. Wilson's unavailability and a reasonable expenditure of Program resources given the specific circumstances of this case. (*Id.* at 4-5.) Respondent filed a responsive expert report by Dr. Wilson on September 23, 2024. (ECF No. 101; Ex. J.)

Petitioner filed this instant motion for interim attorneys' fees and costs on October 18, 2024. (ECF No. 102.) Petitioner's counsel requests a total of $145,820.81 for attorneys' fees and costs, including $89,127.00 in attorneys' fees and $56,693.81 in costs. (*Id.* at 4-5.) In response, respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 requires respondent to file a response to a request by a petitioner for an award of attorneys' fees and costs." (ECF No. 103, p. 1.) He deferred to the undersigned to determine whether petitioner has met the legal standard for an award of interim attorneys' fees and costs as set forth in *Avera v. Secretary of Health & Human Services*, 515 F.3d 1343 (Fed Cir. 2009), as well as the statutory requirements for an award of attorneys' fees and costs. (*Id.* at 2.) Respondent requests that the undersigned exercise discretion in determining a reasonable award for attorneys' fees and costs. (*Id.* at 4.)

## II.    An Award of Interim Attorneys' Fees and Costs is Appropriate

The Vaccine Act allows for the special master to award reasonable attorneys' fees and costs. § 300aa-15(e). Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis. *Avera*, 515 F.3d at 1352.

Additionally, the Federal Circuit has held that interim fee awards are permissible and appropriate under the Vaccine Act, although there is no presumption of entitlement to such fees. *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1374-75 (Fed. Cir. 2010); *Avera*, 515 F.3d at 1352. In *Avera*, the Federal Circuit explained that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. In *Shaw*, the Federal Circuit clarified that, "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375; *see also Chinea v. Sec'y of Health & Human Servs.*, No. 15-95V, 2019 WL 3206829, at *2 (Fed. Cl. Spec. Mstr. June 11, 2019) (observing three factors that have been considered when exercising discretion to award interim attorneys' fees: (1) whether the fee request exceeds $30,000; (2) whether the costs requested, in the aggregate, are more than

3

$15,000; and (3) if the case has been pending for more than 18 months (citing *Knorr v. Sec'y of Health & Human Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017))).  In sum, awards of interim fees and costs are discretionary and are intended to avoid undue hardship.

Here, petitioner stresses the amount of fees and costs incurred, and the uncertainty of the length of time necessary to resolve this matter as factors supporting an award of interim fees and costs.  (ECF No. 102, p. 2.)  Given the length of time this case has been pending and the amount of attorneys' fees and costs at issue, I exercise my discretion to award interim attorneys' fees and costs.  *Accord Chinea*, 2019 WL 3206829, at *2.  Moreover, as noted above, respondent has not objected, but instead deferred to by discretion as to whether petitioner has satisfied the standard for an interim award of attorneys' fees and costs.

### III.    Reasonableness of the Requested Attorneys' Fees

It is "well within the special master's discretion" to determine the reasonableness of attorneys' fees.  *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs*., 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").  In determining the appropriate amount to be awarded, the Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  *Avera*, 515 F.3d at 1347.  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee awarded based on specific findings.  *Id.* at 1348.

Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work.  *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008).  Special masters need not engage in a line-by-line analysis of petitioners' fee application.  *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).  Instead, they may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended.  *Wasson v. Sec'y of Health & Human Servs*., 24 Cl. Ct. 482, 486 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993).  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests[,] . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  *Saxton*, 3 F.3d at 1521.

Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond.  *See Sabella v. Sec'y of Health & Human Servs*., 86 Fed. Cl. 201, 209 (2009).  However, "[t]he failure of respondent to identify with particularity any objection to a request for attorney's fees and costs may be taken into consideration by the special master in the decision."  Vaccine Rule 13(a)(3).

A. <u>Ms. Widman</u>

Petitioner requests an award of $87,527 in interim attorneys' fees for work completed by Ms. Widman, including paralegal level work.  (ECF No. 102, p. 4.)

i.  *Hourly Rates*

Review of billing records indicates that Ms. Widman billed $350 for work completed in 2018 through 2020; $375 for work completed in 2021; $400 for work completed in 2022; $420 for work completed in 2023; and $480 for work completed in 2024.  (ECF No. 102, pp. 7-37.)  Ms. Widman's requested rates for work completed in 2018 through 2023 are reasonable and consistent with rates awarded in her prior decisions.  *E.g.*, *Foukarakis v. Sec'y of Health & Human Servs.*, No. 20-1547V, 2024 WL 1156130, at *2 (Fed. Cl. Spec. Mstr. Feb. 22, 2024) (awarding Ms. Widman $350 per hour for work completed in 2019-2020 and $375 per hour for work completed in 2021); *Clark v. Sec'y of Health & Human Servs.*, No. 17-1553V, 2023 WL 2319374, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 2, 2023) (awarding Ms. Widman $350 per hour for work completed in 2018-2020, $375 per hour for work completed in 2021, and $400 per hour for work completed in 2022); *Hughes v. Sec'y of Health & Human Servs.*, No. 20-1548V, 2024 WL 1253782, at *3 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (awarding Ms. Widman $400 per hour for work completed in 2022 and $420 per hour for work completed in 2023).

The undersigned and another special master previously denied Ms. Widman's request for a rate of $480 per hour for work completed in 2024 in large part due to her failure to explain or substantiate her proposed rate increase as required by Vaccine Rule 13.  *Williams v. Sec'y of Health & Human Servs.*, No. 18-1860V, 2025 WL 755057, at *2, *4 (Fed. Cl. Spec. Mstr. Feb. 11, 2025) (Roth); *Kinney v. Sec'y of Health & Human Servs.*, No. 18-1522V, 2025 WL 1305394, at *3 (Fed. Cl. Spec. Mstr. Apr. 11, 2025). However, in a recent decision, the undersigned awarded Ms. Widman's requested rate of $480 per hour for work completed in 2024.  *Adams v. Sec'y of Health & Human Servs.*, No. 19-929V, 2025 WL 1891970, at *4 (Fed. Cl. Spec. Mstr. June 13, 2025).  In that case, Ms. Widman included a brief explanation indicating that her requested rate of $480 per hour for 2024 is at the lowest end of the allowable rate for her corresponding years of experience in practice and in the Vaccine Program as provided by the Fee Schedule.[3]  *Id.*  Accordingly, given how close the requested rate is to the bottom end of the relevant tier, the undersigned found Ms. Widman's requested rate reasonable and awarded her $480 per hour for work completed in 2024.  *Id.*  The undersigned follows his decision in *Adams* and concludes that the requested rate is reasonable and appropriate.

---

[3] The Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2024 provides that $475 to $563 is an appropriate hourly rate for attorneys with 20 to 30 years of experience in the Program. The Fee Schedule for 2024 can be accessed at https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.

Additionally, petitioner requests a rate of $175 per hour for paralegal work performed on the case.  (ECF No. 102, pp; 7-37.)  The undersigned finds this rate reasonable and in accordance with prior awards for paralegal work performed by Ms. Widman's firm.  *E.g.*, *Foukarakis*, 2024 WL 1156130, at *2.  Accordingly, no reduction in the requested rates is warranted.

ii.    *Reduction in Hours Expended*

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation."  *Avera*, 515 F.3d at 1348.  Counsel should not include hours that are "excessive, redundant, or otherwise unnecessary" in their fee applications.  *Saxton*, 3 F.3d at 1521.  In reducing an award of attorneys' fees, the essential goal is to achieve rough justice.  *Florence v. Sec'y of Health & Human Servs.*, No. 15-255V, 2016 WL 6459592, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016).  Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

After review of the submitted billing records, a reduction in Ms. Widman's attorney's fees is necessary for several reasons.  First, Ms. Widman billed for administrative tasks, such as document filing and file organization, which are not compensable in this Program.[4]  *See, e.g.*, *Paul v. Sec'y of Health & Human Servs.*, No. 19-1221V, 2023 WL 1956423, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2023) (noting that clerical and secretarial tasks are not compensable in the program); *Foukarakis*, 2024 WL 1156130, at *3 (reducing Ms. Widman's fee award due to billing entries for non-compensable administrative tasks including filing, scanning, and optimizing).  Second, some of Ms. Widman's billing entries are vague, which frustrates the Court's ability to assess the reasonableness of the request.[5]  *See, e.g.*, *Boman v. Sec'y of Health & Human Servs.*, No. 15-0256V, 2017 WL 7362539, at *4-5 (Fed. Cl. Spec. Mstr. Sept. 20, 2017) (special master reducing fees by 20% for, *inter alia*, vague billing).  Third,

---

[4] For example, a non-exhaustive list of these entries includes: "Filing Exhibits 10-12" on August 12, 2019; "Amended Petition filed" on May 12, 2021; "Filing Exhibits 22-71" on May 28, 2021; "Filing of Joint Status Report" on January 27, 2022; "Filing of Joint Status Report" on June 22, 2022; "Filing of status report on USCFC website" on October 25, 2023; "File organization" on August 22, 2024; "Filing of Exhibit 92 and pleadings" on August 27, 2024.  (ECF No. 102, pp. 7-37.)

[5] For example, Ms. Widman billed for "file review" and "review of file" on numerous occasions without providing any further detail or description regard the task.  (*See* ECF No. 102, pp. 7-37.)  For some billing entries for "file review," Ms. Widman provided at least some minimal context.  For example, on December 9, 2019, Ms. Widman billed for "Review of file for conference call."  (*Id.* at 11.)  However, these entries are still not especially informative with respect to the actual need for the file review.

some of Ms. Widman's billing entries appear to be duplicative[6] or simply excessive.[7] Notably, Ms. Widman frequently billed for "receipt and review" of emails sent by the paralegal to either the petitioner or petitioner's experts, a task that the paralegal also billed for.[8]  Upon review, a reduction to the paralegal billing hours is also necessary.  A substantial number of the paralegal billing entries are for clerical tasks, such as file organization, document scanning, and uploading and optimizing exhibits, which are non-compensable in this Program.[9]  *See, e.g.*, *Foukarakis*, 2024 WL 1156130, at *3.

Considering all of the above, the undersigned finds that a 20% reduction to Ms. Widman's requested attorneys' fees is reasonable and appropriate, reducing Ms. Widman's award from $87,527 to $70,021.60.

### B. Mr. Mikulski (referring attorney)

In addition, petitioner requests fees for work performed by her prior counsel, Mr. Thaddeus Mikulski, Jr., who did not appear in this action, and referred the matter to Ms. Widman.  (ECF No. 102, pp. 4, 38-39.)

---

[6] For example, on August 22, 2018, Ms. Widman billed for "Review of email from referring attorney with attachments and response" and "Review of attachments from referring attorney."  (ECF No. 102, p. 7.) On June 17, 2024, Ms. Widman billed for "File review" and "File review and email to client."  (*Id.* at 32.) Other entries are also suspicious for duplicative billing due to their vagueness, though they are not explicitly duplicative.  For example, on October 25, 2023, Ms. Widman billed for "Telephone call with client" and "Telephone call with client and paralegal."  (*Id.* at 25.)  While it is entirely possible that Ms. Widman called petitioner twice on this date, her billing entries provide no context or description of the phone calls.  Therefore, it is impossible to tell whether these entries are duplicative or if Ms. Widman did in fact call petitioner twice.

[7] Ms. Widman frequently billed 0.1 hours for minor tasks, a practice for which she has previously been criticized.  *Williams*, 2025 WL 755057, at *5.

[8] For example, on October 11, 2023, Ms. Widman billed 0.1 hours for "Receipt and review of emails between client and paralegal" and the paralegal billed "Correspondence with client regarding meeting date and contact information."  (ECF No. 102, p. 24.)  Based on the detail included in the billing record, the undersigned does not find that this was a communication that required Ms. Widman's involvement or expertise as an attorney.  Accordingly, the undersigned finds that billing for receipt and review of such a communication to be duplicative and excessive.

[9] A non-exhaustive list of these entries includes: "Scanned, OCR'd and labeled Exhibit 79" on October 11, 2023; "Scanned, OCR'd and labeled Exhibit 76" on October 17, 2023; "organized notes to file" on October 17, 2023; "Scanned, OCR'd and labeled Exhibit 78" on October 18, 2023; "Scanned, labeled and optimized Exhibit 77" on October 25, 2023; "Labeled and optimized Exhibit 80" on October 25, 2023; "Transferred all medical records on file to a USB flash drive to send to client for evaluation by new specialist" on December 6, 2023; "Prepared package containing USB flash drive and cover letter for mailing to client" on December 6, 2023; "uploading Exhibits 84 and 85, troubleshooting, compressing files" on July 18, 2024; "Converted Ghacibeh's report into PDF" on August 7, 2024; "Labeled Exhibit 86 – Ghacibeh's Report" on August 7, 2024; "Flattened, optimized, labeled Exhibit 87 – Nakayama" on August 7, 2024; "Flattened, optimized, labeled Exhibit 88 – Vaccine Adverse Effects" on August 7, 2024; "Flattened, optimized, labeled Exhibit 89 – Dupon" on August 7, 2024; "Flattened, optimized, labeled Exhibit 90 – Riordan" on August 7, 2024; and "Flattened, optimized, labeled Exhibit 91 – Kranz" on August 7, 2024.

In order to be eligible to practice in the Vaccine Program, an attorney must be admitted to practice before the Court, and thus a non-admitted attorney generally cannot recover attorneys' fees. *Underwood v. Sec'y of Health & Human Servs.*, No. 00-357V, 2013 WL 3157525, at *4 (Fed. Cl. Spec. Mstr. May 31, 2013); *see also* Vaccine Rule 14(a)(1). However, work performed by a non-admitted attorney in preparing a Vaccine Program for filing, and hence before the petition is actually filed, can be compensated at the non-admitted attorney's normal hourly rate, subject to the same reasonableness considerations applied in determining any fees award. *See Hafner v. Sec'y of Health & Human Servs.*, No. 17-526V, 2021 WL 5410531, at *2 (Fed. Cl. Spec. Mstr. Oct. 26, 2021); *Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689, at *14 (Fed. Cl. Spec. Mstr. May 13, 2014); *Pearson v. Sec'y of Health & Human Servs.*, No. 17-489V, 2019 WL 7167552, at *2 (Fed. Cl. Spec. Mstr. Oct. 29, 2019) (citing *Avila v. Sec'y of Health & Human Servs.*, No. 14-605V, 2016 WL 6995372, at *2 (Fed. Cl. Spec. Mstr. Nov. 4, 2016)). Thus, attorneys who refer cases to practitioners in the Vaccine Program are eligible to recover fees for work that contributed to or advanced the litigation of a petitioner's claim. *See Pearson*, 2019 WL 7167552, at *2.

Mr. Mikulski is requesting $1,600 in fees for 4 hours of work. (ECF No. 102, pp. 38-39.) After reviewing Mr. Mikulski's billing records, I find that none of the tasks billed are compensable in the Program as they did not contribute to or advance the litigation of petitioner's claim. In particular, a significant portion of the time Mr. Mikulski billed was time he spent gaining knowledge about the Vaccine Program and the applicability of the National Vaccine Compensation Act. (*Id.* at 38.) "It is well established that attorneys may not be compensated for professional development concerning the Vaccine Program." *Rojas v. Sec'y of Health & Human Servs.*, No. 14-1220V, 2017 WL 6032300, at *12 (Fed. Cl. Spec. Mstr. Apr. 5, 2017). *See also Barrett*, 2014 WL 2505689, at *14 (finding that the referring attorney "should not receive compensation for engaging in professional development concerning the Vaccine Program and its applicable rules and case law, especially not when the matter was later referred to attorneys with demonstrated expertise in this field"). Accordingly, petitioner will not be reimbursed for any fees that Mr. Mikulski incurred in this matter, resulting in a reduction of $1,600 in attorneys' fees.

## IV.    Reasonableness of the Requested Attorneys' Costs

Petitioner requests an award of $56,693.81 in interim costs, representing $55,505 in unpaid expert fees, $305.55 in other unpaid costs, $876.37 in costs incurred by counsel, and $6.89 in costs paid personally by petitioner. (ECF No. 102, pp. 4-5.)

### A.    Expert Fees

Expert costs are also subject to the same reasonableness requirements as attorneys' fees. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for

reimbursement of costs."). Expert work in this program is also assessed using the lodestar method. *Avera*, 515 F.3d at 1347 (applying the lodestar approach to the Vaccine Act); *Chevalier v. Sec'y of Health & Human Servs.*, No. 15-001V, 2017 WL 490426, at *2-3 (Fed. Cl. Spec. Mstr. Jan. 11, 2017) (citing *Avera* and applying the lodestar calculation to both attorneys' fees and expert costs). Generally, expert hourly rates are based on a number of factors, many of which touch broadly on the expert's qualifications and on the market for the relevant expert services, but which also include "the nature, quality, and complexity of the information provided" by the expert, as well as "any other factor likely to be of assistance to the court in balancing the interests" at stake. *Aycock v. Sec'y of Health & Human Servs.*, No. 19-235, 2023 WL 8869423, at *7 (Fed. Cl. Spec. Mstr. Nov. 8, 2023) (citing *McClain v. Owens-Corning Fiberglas Corp.*, No. 89 C 6226, 1996 WL 650524, at *3 (N.D. Ill. Nov. 7, 1996)); *see also Wilcox v. Sec'y of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997).

       i.   *Dr. Ghacibeh*

Petitioner requests $17,500 for 35 hours of work performed by Dr. Ghacibeh at a rate of $500 per hour. (ECF No. 102, p. 57.) Dr. Ghacibeh submitted four expert reports and observed petitioner's testimony during the fact hearing. (*Id.* at 56-57.) The requested hourly rate is consistent with what Dr. Ghacibeh has been awarded in prior decisions for his work in the Program. *E.g.*, *Foukarakis*, 2024 WL 1156130, at *4; *Gatto v. Sec'y of Health & Human Servs.*, No. 21-924V, 2025 WL 1235088, at *3 (Fed. Cl. Spec. Mstr. Mar. 31, 2025). Additionally, I find the total number of hours billed by Dr. Ghacibeh to be appropriate and reasonable, given the tasks he performed. Accordingly, petitioner is awarded Dr. Ghacibeh's expert fees in full.

      ii.   *Dr. Akbari*

Petitioner requests $38,005 for work performed by Dr. Akbari at a rate of $550 per hour. (ECF No. 102, p. 55.) However, Dr. Akbari has consistently been awarded an hourly rate of $500 for his work in the Program. *See Bristow v. Sec'y of Health & Human Servs.*, No. 19-457V, 2022 WL 17821111 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (listing prior cases in which Dr. Akbari has been awarded a rate of $500 per hour in the Vaccine Program). In prior decisions, the undersigned and other special masters have denied Dr. Akbari's request for an increased hourly rate of $550 and instead found $500 per hour to be a more appropriate rate given his experience and credentials. *E.g.*, *Harris v. Sec'y of Health & Human Servs.*, No. 18-944V, 2021 WL 2285295, at *4 (Fed. Cl. Spec. Mstr. May 10, 2021); *Baker v. Sec'y of Health & Human Servs.*, No. 21-1869V, 2025 WL 1513417, at *4-5 (Fed. Cl. Spec. Mstr. Apr. 29, 2025) (Dorsey); *Reinhardt v. Sec'y of Health & Human Servs.*, No. 17-1257V, 2021 WL 2373818, at *4 (Fed. Cl. Spec. Mstr. Apr. 22, 2021) (Oler); *Nieves v. Sec'y of Health & Human Servs.*, No. 18-1602V, 2023 WL 7131801, *5 (Fed. Cl. Spec. Mstr. Oct. 2, 2023) (Corcoran). Moreover, petitioner provided no evidence to support awarding Dr. Akbari a higher rate of $550 per hour in the instant motion. Accordingly, the undersigned finds that a rate of $500 per hour, which has been consistently awarded to Dr. Akbari, to be appropriate

and reasonable for the work he completed in this case. This results in a reduction of $3,455, from $38,005 to $34,550.

Dr. Akbari billed a total of 69.1 hours his work on the case. He prepared one expert report and observed petitioner's testimony at the fact hearing. After reviewing Dr. Akbari's billing records, the undersigned finds the amount of time billed to be excessive, especially considering that Dr. Akbari billed almost twice as many hours as Dr. Ghacibeh, who prepared four expert reports in this case. Other special masters have found Dr. Akbari's billing practices to be excessive and vague and accordingly reduced his award. *E.g.*, *Reinhardt*, 2021 WL 2373818, at *5; *Nieves*, 2023 WL 7131801, at *5. Dr. Akbari's expert report is 18 pages inclusive of his credentials, a summary of petitioner's relevant medical history, diagrams, and a list of references. (*See* Ex. 22.) He spent roughly 25 hours reviewing medical literature and another 20.8 hours selecting and highlighting his references and preparing, editing, formatting, and reviewing his expert report. (*See* ECF No. 102, pp. 52-54.)

Review of Dr. Akbari's billing records also suggests that Ms. Widman unreasonably and inappropriately tasked Dr. Akbari with preparation of her prehearing submission, which inflated the number of hours Dr. Akbari billed. The prehearing order[10] issued on June 27, 2024, instructed that

> Any party wishing to rely upon a medical article during direct examination of any of their witnesses shall file a short explanation of the proposition that the article is intended to support and shall ensure that the record of the case includes a copy of the article with relevant portion(s) highlighted, boxed, circled or similarly marked. If such marking was done at the time of filing, it need not be repeated. This may be filed as a separate document or incorporated into the prehearing brief with any necessary article excerpts included as attachments to the brief.

(ECF No. 85, p. 3.) On July 9, 2024, Dr. Akbari billed 0.2 hours for email communication with Ms. Widman "requesting summary of each references in my report for the court-preparation of brief." (ECF No. 102, p. 54.) On July 10 and 11, 2024, Dr. Akbari billed 3.2 hours for the preparation of the medical literature explanations. (*Id.*)

While it is not inherently unreasonable for an attorney to consult with their expert in preparing this type of summary, it must be stressed that the prehearing order directed that summary be completed as part of the briefing process, which is the purview of the attorney rather than the expert. Here, petitioner's counsel engaged Dr. Akbari to wholly draft the medical literature summary. This is a practice for which Ms. Widman has

---

[10] The prehearing order at ECF No. 85 was issued at the juncture when this case was proceeding to an entitlement hearing. This prehearing order was later terminated when the two-day entitlement hearing set to commence on August 29, 2024 was rescheduled as a one-day fact hearing due to the unavailability of respondent's expert. (ECF No. 96.) Therefore, the prehearing submission that this analysis relates to was never filed by petitioner.

previously been criticized.  *See Kinney*, 2025 WL 1305394, at *6.  Accordingly, Dr. Akbari will not be reimbursed for any tasks relating to the medical literature explanation.

Additionally, review of Dr. Akbari's billing records indicate that he billed an excessive amount of time for communications with Ms. Widman.  This is a practice that other special masters have cautioned Dr. Akbari against.  *E.g.*, *Walters v. Sec'y of Health & Human Servs.*, No. 15-1380V, 2022 WL 1077311, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (reducing Dr. Akbari's requested time by 20% for excessive billing practices, including excessive and vague communications with Ms. Widman).  Many of these communications were for the purpose of discussing strategy.  (*See* ECF No. 102, pp. 54-55.)  Notably, Dr. Akbari billed 2.5 hours on August 22 and 27, 2024, for conference calls with Ms. Widman, during which Dr. Akbari reviewed the questions that Ms. Widman intended to ask petitioner on direct and redirect examination at the hearing and discussed other issues relating to hearing preparation and strategy.  (*Id.* at 55.)  At this juncture, the entitlement hearing had been rescheduled to a fact hearing at which petitioner was the only witness to testify so it was unreasonable for Ms. Widman to incur these expert costs.

Other communications reflected in the billing also appear to be unnecessary.  For example, on August 29, 2024, the date of the fact hearing, Dr. Akbari billed for communications with Ms. Widman regarding a supplemental report and deadlines.  (ECF No. 102, p. 55.)  However, in a proposal submitted by the parties and adopted by the undersigned in July of 2024, the parties agreed that only Dr. Ghacibeh and Dr. Wilson would submit supplemental reports prior to proceeding to briefing the case and resolving entitlement on the record.  (ECF Nos. 95-96.)  Therefore, it was unnecessary for Ms. Widman to consult Dr. Akbari about a supplemental report and future deadlines when it was known that his role in the case had essentially concluded.

In light of the above, the undersigned finds that a 20% reduction in Dr. Akbari's requested time, is reasonable and appropriate.  This results in a reduced award of $27,640 for Dr. Akbari's work on the case.[11]

B. Other Costs

I have reviewed the remainder of the costs requested and find that they are reasonable and sufficiently documented.  Therefore, I award reimbursement of those costs in full.

## V.    Conclusion

**In light of the above, petitioner's application for interim attorneys' fees and costs is hereby GRANTED and petitioner is awarded interim attorneys' fees and costs in the total amount of $116,350.41 (representing $116,343.52 for counsel's fees and costs and $6.89 for petitioner's personal costs) to be paid through an**

---

[11] Given the reduction with respect to Dr. Akbari's requested rate, this reduction is calculated from the reduced amount of $34,550.

**ACH deposit to petitioner's counsel of record, Ms. Phyllis Widman's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[12]

**IT IS SO ORDERED.**

<u>**s/Daniel Horner**</u>
Daniel Horner
Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.